IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-272-BO

| | |
|---|---|
| MARDINA M. GRISSON, Administratrix for the Estate of Roman Lee Drake, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) **ORDER** ) |
| CITY OF FAYETTEVILLE, TOM BERGAMINE, SHEILA THOMAS, and JONATHAN FISHER, | ) ) ) ) ) |
| Defendants. | ) |

This matter comes before the Court on defendants' motion for summary judgment. A hearing was held before the undersigned on September 4, 2015, in Raleigh, North Carolina, and the matter is ripe for ruling. For the reasons discussed below, defendants' motion is granted.

BACKGROUND

Before the Court can summarize the facts in this case, it must determine the scope of the evidentiary record. A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence

of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." *Anderson v. LibertyLobby, Inc.*, 477 U.S. 242, 252 (1986). "It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993). To be admissible at the summary judgment stage, "documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)." *Id.*

In support of its motion for summary judgment, defendants submitted multiple sworn affidavits. [DE 26–2 through 26–8]. These were propounded as uncontroverted and are properly admissible at summary judgment. Accordingly, plaintiff was compelled to come forward with evidence establishing that there is a disputed issue of material fact. Plaintiff utterly failed to meet her burden. Not one of the five documents submitted in support of her response to defendant's motion is attached to an affidavit, or otherwise is sworn or authenticated. Likewise, plaintiff's complaint was not signed under oath. In sum, plaintiff has not submitted any sworn or authenticated exhibit, deposition testimony, or admission.

The Court is bewildered and troubled by plaintiff's lack of evidentiary showing. Counsel was duty-bound to present evidence to rebut the opposing party's potentially case-dispositive motion, and failure to present any admissible evidence borders on professional negligence. Counsel's performance is particularly disturbing because the events underlying this lawsuit resulted in the death of a human being. Nevertheless, as the discovery period has closed, the Court is constrained to proceed with the record before it, which is comprised solely of the affidavits and supporting documentation submitted by defendant in support of the instant motion.

2

*Factual Background*

Around 12:30am on April 10, 2012, Bill Gomez (Gomez) overheard an argument between his neighbor, Crystal Moore, and her boyfriend, Roman Drake (Drake). Gomez Aff. ¶ 4 [DE 26–8]. Gomez saw a car leaving the residence shortly thereafter. *Id.* ¶ 6. Between 2am and 2:30am, Gomez heard a car door shut followed by gunshots. *Id.* ¶ 7. He saw a black male get into a dark car and drive off. *Id.* ¶ 9. Gomez then called the Fayetteville Police Department to report the shooting. *Id.* ¶ 10. While waiting for law enforcement to arrive, he saw Drake's vehicle leave the house. *Id.* ¶ 11.

Officer Jonathan Fisher received a shots fired call around 2:30am. Fisher Aff. ¶ 4 [DE 26–6]. He headed toward 1500 Blan Street, and saw Drake's vehicle drive past him in the opposite direction. *Id.* ¶ 5–6. Upon arriving at 1500 Blan, Officer Fisher spoke to Gomez, who relayed what he had seen. *Id.* ¶ 9–10. Officer Fisher inspected the property and saw two bullet holes in the side of the trailer. *Id.* ¶ 15. No one answered the door of the residence even when Officer Fisher identified himself as a police officer. *Id.* ¶ 16–17. Around this time, Officer Sheila Thomas had also arrived on the scene. *Id.* ¶ 18; Thomas Aff. ¶ 6 [DE 26–7]. While talking to Gomez outside, both officers heard a vehicle coming down the road. Fisher Aff. ¶ 25; Thomas Aff. ¶ 13. Drake was driving. Fisher Aff. ¶ 35; Thomas Aff. ¶ 20. He drove toward Fisher at a high rate of speed. Fisher Aff. ¶ 30.; Gomez Aff. ¶ 22. Officer Fisher identified himself as Fayetteville Police and told Drake to stop. *Id.* ¶ 23; Fisher Aff. ¶ 30. The vehicle did not stop, so Officer Fisher drew his weapon, turned on a light mounted next to the weapon, and continued to tell Drake to stop. *Id.* ¶ 31–32. Again, the vehicle did not stop, but sped past Officer Fisher, forcing him to jump out of the way to avoid being hit. *Id.* ¶ 34; Thomas Aff. ¶ 15; Gomez Aff. ¶ 24. The vehicle then made a wide right turn and circled back toward the residence at 1500 Blan.

3

Thomas Aff. ¶ 15; Fisher Aff. ¶ 36. As Officer Fisher holstered his weapon, the vehicle again began speeding up and driving toward Officer Thomas. *Id.* ¶ 39; Thomas Aff. ¶ 16. Officer Thomas identified herself as Fayetteville Police and told Drake to stop. *Id.* ¶ 17; Fisher Aff. ¶ 40. The vehicle came within inches of hitting Officer Thomas, who jumped out of the way. *Id.* ¶ 41; Thomas Aff. ¶ 18–19; Gomez Aff. ¶ 25–26.

Drake then turned the vehicle around and headed back towards Officer Fisher. Id. ¶ 26–27;Thomas Aff. ¶ 22; Fisher Aff. ¶ 44. Officer Fisher continued to tell Drake to stop. *Id.*; Thomas Aff. ¶ 22–23; Gomez Aff. ¶ 30. Drake did not stop, but instead sped up and continued toward Officer Fisher. Fisher Aff. ¶ 45; Gomez Aff. ¶ 31. Believing his life was in jeopardy, Officer Fisher fired through the windshield. *Id.* ¶ 46–48. While he was firing, at the last minute, the vehicle veered right and missed hitting Officer Fisher by a few inches. *Id.* ¶ 49; Gomez Aff. ¶ 35. When Officer Thomas heard the gunshots, she also drew her weapon and fired, fearing that Officer Fisher's life was in danger. Thomas Aff. ¶ 25–26. The vehicle hit Officer Fisher's patrol car then appeared to veer left. Fisher Aff. ¶ 50–51; Gomez Aff. ¶ 35. It continued on past Officer Fisher as he fired the last shot in his magazine. Fisher Aff. ¶ 52. Officer Fisher's weapon, a Glock model 22, had 15 bullets in the magazine and was capable of firing one round every .25 seconds. *Id.* ¶ 53. After the shots, Drake's vehicle veered right and crashed into another mobile home. *Id.* ¶ 54.; Thomas Aff. ¶ 27. Drake subsequently died of injuries stemming from the shooting.

Plaintiff filed this action on April 9, 2014, in Cumberland County Superior Court, alleging claims against defendants for unconstitutional excessive force and deliberate indifference in violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. Plaintiff also raises pendent state claims of: 1) wrongful death by the City and Chief

4

Bergamine in his official capacity, and 2) negligence and gross negligence the City and Officers Fisher and Thomas in their official and individual capacities. Defendants have raised the defenses of qualified immunity, governmental immunity, and public officer immunity.

## DISCUSSION

I.  DELIBERATE INDIFFERENCE, SECTION 1983 CLAIM

To establish a deliberate indifference claim under section 1983, plaintiff must demonstrate that the alleged excessive force resulted from an official policy or custom or deliberate indifference by the municipality and its officials in the training and supervision of its employees. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Layman ex rel. Layman v. Alexander*, 343 F.Supp.2d 483, 489 (W.D.N.C. 2004) (*citing Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). Plaintiff must, therefore, demonstrate that the failure to train reflects a policy or custom of, or a conscious decision by, the municipality. *Id.*

In support of her claim, plaintiff produced a 2011 Fayetteville Police Department Annual Report (the Report) which discusses police department statistics. [DE 32–5]. As discussed *supra*, however, the Report cannot be considered at this stage because it is unsworn and unauthenticated. There is no evidence in the record that would support plaintiff's claim, thus there is no issue of fact, and summary judgment as to plaintiff's section 1983 deliberate indifference is warranted.

Even if it were proper for the Court to consider the Report, plaintiff could not meet her burden of establishing a genuine issue of material fact as the existence of an official Fayetteville

5

Police Department policy or deliberate indifference in the training and supervision of its employees. The Report does not establish the existence of improper training, discuss any decision not to train, or demonstrate that the incidents it cites bear any resemblance to the instant factual scenario. The only thing the report notes is an increase in use of force incidents, unprofessional conduct, and negligence complaints. That alone is insufficient to establish deliberate indifference. *See, e.g., Carter v. Morris*, 164 F.3d 215, 219 (4th Cir. 1999) (finding that allegations of prior instances of excessive force and citizen complaints is "insufficiently precise to establish the existence of a municipal policy or custom that actually could have caused [plaintiff's] specific injuries."). Accordingly, even if the Court were able to consider the Report as evidence, it would still grant defendant's motion for summary judgment as to the deliberate indifference claim.

II. QUALIFIED IMMUNITY, SECTION 1983 CLAIM

The privilege of qualified immunity protects government officials from liability so long as they could reasonably believe that their conduct does not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012); *Messerschmuidt v. Millender*, 132 S. Ct. 1235, 1244–45 (2012). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court recognized a two-step procedure for determining whether qualified immunity applies that "asks first whether a constitutional violation occurred and second whether the right violated was clearly established." *Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010). Judges are permitted to exercise their discretion, however, in regard to which of the two prongs should be addressed first in light of the

facts and circumstances of the particular case. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Plaintiff bears the burden to show that the constitutional violation occurred, while defendants bear the burden to show whether the right was clearly established. *Henry*, 501 F.3d at 377-378. A right is clearly established if it "would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. Defendants are entitled to qualified immunity if the answer to either question is "no." *See, e.g., Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080; *Miller v. Prince George's Cty., Maryland*, 475 F.3d 621, 627 (4th Cir. 2007).

*Constitutional Violation*

"Claims that law enforcement officers used excessive force when making an arrest 'should be analyzed under the Fourth Amendment and its 'reasonableness' standard.'" *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Fourth Amendment is applicable to the states through the Fourteenth Amendment. In determining whether the force was objectively unreasonable, a court considers the evidence from the perspective of a reasonable officer on the scene and may not employ 20/20 hindsight. *Graham*, 490 U.S. at 396–97.

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). Because the standard is an objective one, the Court is not concerned with the officers' motivation or intent. *See e.g. Clay v. Emmi*, 797 F.3d 364, 370 (6th Cir. Aug. 13, 2015). Moreover, it is appropriate to determine whether the force used was objectively reasonable in full context, as a segmented view of the events "misses the forest for the trees." *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (citation omitted). The

7

use of deadly force by a police offer may be applied only "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others...." *Tennessee v. Garner*, 471 U.S.1, 11 (1985).

### *Officer Thomas*

At argument, plaintiff conceded that none of Officer Thomas's three shots was the fatal shot and that the claim against Officer Thomas was not integral to this lawsuit. It is unsurprising, therefore, that Officer Thomas is entitled to qualified immunity. At the time Officer Thomas made the decision to shoot, she had observed the subject vehicle nearly hit Officer Fisher and then come within inches of hitting her before performing a U-turn at the last minute despite instructions to stop. Thomas Aff. ¶ 15 [DE 26–7]. She made eye contact with Drake and again told him to stop through the open driver's side window, but he failed to stop and drove toward Officer Fisher. *Id.* ¶ 17, 20–22. She heard gunshots, then fired at the driver's door of the vehicle. *Id.* ¶ 25. She stopped firing when she recognized that there was a potential for cross-fire. *Id.* ¶

Under these circumstances, Officer Thomas had "sound reason to believe that [Drake] pose[d] a threat of serious physical harm to" herself or Officer Fisher. *Garner*, 471 U.S. 1 (1985). A vehicle driven directly at a law enforcement officer constitutes a deadly weapon. *See, e.g., State v. Batchelor*, 167 N.C. App. 797, 800 (2005); *State v. Spencer*, 218 N.C. App. 267, 275 (2012). Moreover, Officer Thomas heard shots fired, believed that Officer Fisher's life was in danger, and ceased firing as soon as she recognized it was unsafe. Even when viewing the facts in the light most favorable to Drake, the actions of Officer Thomas were objectively reasonable, and she is entitled to qualified immunity.

*Officer Fisher*

At the time Officer Fisher made the decision to fire, he knew there had been shots fired into a residence located at 1500 Blan Street in Fayetteville. Fisher Aff. ¶ 4 [DE 26–6]. As he arrived on the scene, he saw a black car driving past him, leaving the scene. *Id*. ¶ 5. After conducting a brief investigation, during which he discovered bullet holes in the trailer, Officer Fisher noticed the car returning to the scene. *Id*. ¶ 15, 25. It accelerated as it drove toward him, and did not stop when he and Officer Thomas identified themselves as Fayetteville Police Officers. *Id*. ¶ 30, 31–32. Officer Fisher had to jump behind the fence to avoid being hit. *Id*. ¶ 34. The car drove past Fisher, then circled back around toward Officer Thomas, who also was telling the driver, Drake, to stop. *Id*. ¶ 36, 39–40. Drake made a U-turn at the last minute, avoiding Officer Thomas, but the car turned back towards Officer Fisher, who drew his firearm and continued to tell the car to stop. *Id*. ¶ 43–45. When the car was about ten feet from Officer Fisher, still accelerating and headed directly for him, Officer Fisher began firing his weapon and emptied his entire clip in the direction of the car's windshield. *Id*. ¶ 45–47, 52. The clip consisted of 15 rounds, and the firearm fired four shots per second. *Id*. ¶ 53.

As the Court sees it, Officer Fisher's decision to use force stemmed from roughly the same facts that gave rise to Officer Thomas's decision to use force: he was being chased by a vehicle that refused to heed requests to stop and he had no way to escape the vehicle's path. Officer Fisher, however, also had seen the car driving away from the scene at the time of the original shots fired call.

On balance, the factors to be considered weigh in favor of a finding that the force used by Officer Fisher was not objectively unreasonable. Officer Fisher repeatedly attempted to tell the driver to stop, tried to get out of the way, displayed his firearm without shooting, and waited

9

until he was unable to escape prior to making the decision to use force. He reasonably perceived a threat that was escalating in severity. While fifteen shots may have been more than necessary when considering the circumstances in hindsight, the rounds were fired in a total of approximately four seconds. Under these circumstances, and having considered the officers' actions in context and from the perspective of a reasonable officer on the scene, the Court holds that Fisher made at worst mistaken but reasonable judgment and that no constitutional violation occurred. Because the Court finds that the force used was not objectively unreasonable, it need not consider the second step of the qualified immunity analysis. *Morse v. Frederick*, 551 U.S. 393, 400 (2007); *see also Gregg v. Ham*, 678 F.3d 333, 341 n.7 (4th Cir. 2012) ("To prevail under qualified immunity, [defendant] has to show either that there was no constitutional violation or that the right violated was not clearly established."). Accordingly, the Court grants defendants' motion on qualified immunity as to the Section 1983 claims.

III.    STATE LAW CLAIMS

Defendants are further entitled to summary judgment on plaintiff's remaining state law claims.

*Negligence & Gross Negligence*

Plaintiff's negligence claim against the City of Fayetteville alleges that the town failed to exercise reasonable care in the supervision and training of its police officers in the use of force. Plaintiff also brings a wrongful death claim against Chief Bergamine in his official capacity, alleging that he, too, was negligent in his hiring, training, and oversight of Officers Fisher and Thomas. Plaintiff further alleges a claim for negligence and gross negligence against Officers Fisher and Thomas in their official and individual capacities, asserting that their actions were willful, wanton, deliberate, and/or grossly negligent and in conscious and/or reckless disregard for the life and safety of Drake. Official capacity suits "generally represent only another way of

10

pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal quotation omitted). Accordingly, plaintiff's claims against Chief Bergamine and Officers Fisher and Thomas in their official capacities are redundant, and are dismissed as duplicative because the City is also a named defendant. *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004).

Accordingly, plaintiff's negligence claims against Officers Thomas and Fisher in their individual capacities and against the City remain. Public officer immunity protects public officials performing discretionary acts unless their acts are found to be malicious, corrupt, or outside the scope of their duties. *Evans v. Chalmers*, 703 F.3d 636, 657 (4th Cir. 2012). Public officer immunity "serves to protect individuals from liability for mere negligence, but not for malicious or corrupt conduct, in the performance of their official duties." *Thompson v. Town of Dallas*, 142 N.C. App. 651, 655 (2001). Officers Thomas and Fisher are protected by public official immunity as the Court has found that their actions were not objectively unreasonable, and thus could not be considered to be malicious or corrupt. *See Cooper v. Sheehan*, 735 F.3d 153, 160 (4th Cir. 2013) (tying merits of gross negligence claim to reasonableness of officer's actions). A claim for negligent supervision and training is "derivative and dependent on the resolution of the negligence claims against the defendant-officers. Without a underlying negligence charge against the deputies, a claim of negligence against the [City] can not be supported." *Prior v. Pruett*, 143 N.C. App. 612, 622 (2001). Therefore, because summary judgment is appropriate as to plaintiff's negligence and gross negligence claims against the officers in their individual capacities, it is also appropriate as to plaintiff's remaining claim against the City.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [DE 26] is GRANTED. The Clerk of Court is DIRECTED to enter judgment accordingly and to close the case.

SO ORDERED, this __1__ day of October, 2015.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE